## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re: CHUCK McCUNE and          No. 20-12326-j7
CHUTHAMARD McCUNE,

       Debtors.

---

ROBERT PIDCOCK, as Personal Representative
of the Estate of Thomas Kuehn,

       Plaintiff,                    Adversary No. 21-1013-j

v.

CHUCK McCUNE and
CHUTHAMARD McCUNE,

       Defendants.

### <u>MEMORANDUM OPINION REGARDING PLAINTIFF'S<br>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

THIS MATTER is before the Court on a motion for partial summary judgment

(the "Summary Judgment Motion" – AP Doc. 151),[1] filed by plaintiff Robert Pidcock, as

Personal Representative of the Estate of Thomas Kuehn (the "Personal Representative"). The

Summary Judgment Motion seeks partial summary judgment against debtor-defendants Chuck

McCune and Chuthamard McCune, with respect to the amount of the Personal Representative's

claim and its non-dischargeability, primarily on the basis of a state court judgment which the

Personal Representative argues is entitled to preclusive effect.

Defendant Chuck McCune filed a response in opposition to the Summary Judgment

Motion (the "Response" – AP Doc. 152), as well as a supplemental response (the "Supplemental

---

[1] References to "Doc. __" are to the docket in the bankruptcy case, Case No. 20-12326-j7. References to
"AP Doc. __" are to the docket in this adversary proceeding, Adv. Proc. No. 21-1013-j.

Response" – AP Doc. 164). Defendant Chuthamard McCune did not file a response. The

Personal Representative filed a reply to the Response and Supplemental Response (AP Doc.175).

After consideration of the Summary Judgment Motion, the Court grants in part and denies in part

the Summary Judgment Motion as follows:

(1) The Court will grant summary judgment in favor of the Personal Representative as to the validity, existence, and amount of the debt fixed in the Amended State Court Judgment for the Stock Purchase Amount and Loan Amount (as defined below on p. 5). The Amended State Court Judgment has claim preclusive effect with respect to its ruling that the McCunes jointly and severally owe the Stock Purchase Amount and Loan Amount, including interest as set forth in the Amended State Court Judgment.

(2) The Court will deny summary judgment on the Personal Representative's request for non-dischargeability of the Loan Amount under § 523(a)(2).[2] The Amended State Court Judgment does not have issue preclusive effect with respect to fraud because it was not "actually litigated." Further, the Amended State Court Judgment removed the clause stating that the Loan Amount was "procured by fraud as stated above," and therefore makes no findings or conclusion of fraud that would lead to non-dischargeability under § 523(a)(2).

(3) The Court will deny summary judgment on the Personal Representative's request for non-dischargeability of the Stock Purchase Amount and Loan Amount under § 523(a)(19). The Amended State Court Judgment made no findings or conclusion as to whether the McCunes were liable for securities violation(s), and the Personal Representative has failed to demonstrate in his Summary Judgment Motion papers that the debt is non-dischargeable under § 523(a)(19).

## I.    SUMMARY JUDGMENT STANDARDS

Summary judgment will be granted when the movant demonstrates that there is no

genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See*

Fed. R. Civ. P. 56(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

The "party seeking summary judgment always bears the initial responsibility of informing

the . . . court of the basis for its motion, and . . . demonstrat[ing] the absence of a genuine issue

of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Bacchus Indus.,*

---

[2] Unless otherwise specified, references to "section __" or "§ __" are to title 11 of the United States Code.

*Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991) ("The moving party has the initial burden to show that there is an absence of evidence to support the nonmoving party's case.") (internal quotation marks omitted).

Only if the properly supported material facts entitle the requesting party to judgment as a matter of law is it appropriate for the court to grant summary judgment. *Celotex*, 477 U.S. at 323. In moving for summary judgment, the party "must support the assertion" that "a fact cannot be . . . genuinely disputed" by: (1) "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or (2) "showing that the materials cited [by the opposing party] do not establish the . . . presence of a genuine dispute, or that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Id.* In considering a motion for summary judgment, the court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie,* 526 U.S. 541, 552 (1999); *Genberg v. Porter*, 882 F.3d 1249, 1253 (10th Cir. 2018). Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Thus, summary judgment is appropriate "if the evidence points only one way and no reasonable inferences could support the non-moving

3

party's position." *Genberg*, 882 F.3d at 1523.

With respect to the burden of proof, "[e]xceptions to discharge are to be narrowly construed" and "the objector to discharge has the burden of proving by a preponderance of the evidence that a debt is not dischargeable." *In re Miller*, 55 F.3d 1487, 1489 (10th Cir. 1995) (internal quotation marks omitted); *see also Grogan v. Garner*, 498 U.S. 279, 291 (1991) ("[T]he standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard."); *Alamogordo v. Valdez (In re Valdez)*, No. 04-15876, 2007 WL 1160357, at *3 (Bankr. D.N.M. Apr. 17, 2007) ("Exceptions to discharge are construed narrowly, and the burden of proving that a debt falls within a statutory exception is on the party opposing discharge.").

A plaintiff bears the burden of proof on each element of a non-dischargeability claim, and moving for summary judgment, "must show that there is no genuine dispute of material fact as to each necessary element, so that they are entitled to judgment as a matter of law on each element of the [non-dischargeability] claim." *Blake v. Fusco (In re Fusco)*, 641 B.R. 438, 457 (Bankr. E.D.N.Y. 2022) (applying the standard in the context of a § 523(a)(19) claim); *see also Cago, Inc. v. Slade (In re Slade)*, 471 B.R. 626, 639 (Bankr. D.N.M. 2012) (providing that creditor bears the burden of proof as to each element of non-dischargeability claim under § 523(a)(2)(A)), *abrogated on other grounds by Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1754 (2018).

## II.     PROCEDURAL BACKGROUND

Chuck and Chuthamard McCune filed their bankruptcy case on December 29, 2020. At the time, there was a pending lawsuit in the Second Judicial District Court in the State of New Mexico, Case No. D-202-CV-2019-03218 (the "State Court Action"). The state court entered a

4

judgment in the State Court Action on September 15, 2020 (the "Original State Court Judgment"), awarding the Personal Representative damages against Chuck McCune, Chuthamard McCune, and McCune Works, Inc. ("McCune Works").

On April 1, 2021, the Personal Representative filed a non-dischargeability complaint initiating this adversary proceeding, Adv. Proc. No. 21-1013-j. On January 21, 2022, the Court entered an order modifying the automatic stay to permit the McCunes to return to state court and seek modification of the Original State Court Judgment.

On September 7, 2022, the Personal Representative filed his Summary Judgment Motion in order to seek partial summary judgment that:

 (1) The Original State Court Judgment establishes:

  (a) The loss to Mr. Kuehn from the stock purchase in McCune Works was $193,240.00, plus prejudgment and post-judgment interest (the "Stock Purchase Amount");

  (b) The loss to Mr. Kuehn from the loan to McCune Works was $96,367.00, plus 6% interest beginning April 1, 2019 (the "Loan Amount");

  (c) Chuck and Chuthamard McCune are jointly and severally liable for the Stock Purchase Amount and the Loan Amount; and

  (d) the Loan Amount is not dischargeable, because it was procured by fraud; and

 (2) The Stock Purchase Amount and Loan Amount are non-dischargeable because they arose from state and federal securities violations.

The state court entered an amended judgment on December 21, 2022 (the "Amended State Court Judgment"), removing language that the Loan Amount was procured by fraud.[3]

---

[3] The Personal Representative filed the Summary Judgment Motion before the Amended State Court Judgment was entered. Because the Amended State Court Judgment supersedes the Original State Court

At a status conference on February 23, 2023 with respect to the Summary Judgment

Motion,

> the Court noted that in order for a debt to be non-dischargeable under 11 U.S.C.
> § 523(a)(19), there must be a judgment that makes a determination of federal or
> state securities law violation(s). The Court indicated that, at this time, it will not
> grant preclusive effect to the [Amended State Court Judgment] with respect to
> securities law violation(s), because the judgment is silent as to whether there is
> any liability for, or any damages were awarded based on, securities law
> violation(s). Mr. McCune indicated that he is willing to return to state court to
> request clarification on that point. The Court fixed a deadline for [the Personal
> Representative] to file a notice of record stating whether he wishes to return to
> state court to seek such clarification.

Order Resulting from Status Conference, Doc. 197 at pp. 1-2. The Personal Representative

subsequently filed a notice of record stating that he does not wish to return to state court to seek

clarification on the question of securities violation(s). In the notice, the Personal Representative

stated:

> Plaintiff believes that the amended judgment, along with the other pleadings filed
> in cause D-202-CV-2019-03218 in the Second Judicial District, including the
> Complaint filed April 19, 2019 with its attached exhibits of the loan documents
> and the stock sales receipts, sufficiently identify the damages amounts awarded as
> arising from violations of securities laws.

Doc. 199 at pp. 1-2.

## III.  FACTUAL BACKGROUND[4]

### a.  Facts Not Subject to Genuine Dispute

The Original State Court Judgment provided as follows:

> The Court hereby grants judgment in favor of Robert Pidcock, as
> personal representative of the estate of Thomas W. Kuehn, against Chuck

---

Judgment, the Court will treat the Personal Representative's request to give preclusive effect to the
Original State Court Judgment as a request to give the Amended State Court Judgment preclusive effect.

[4] The Court takes judicial notice of the docket and claims register, and the documents therein, in the main
bankruptcy case (Case No. 20-12326-j7), as well as the docket and documents on the docket in this
adversary proceeding (Adv. Proc. No. 21-1013-j). *See* Fed. R. Evid. 201(b)(2) and (c); *St. Louis Baptist
Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may
sua sponte take judicial notice of its own docket), *abrogated on other grounds by McGregor v. Gibson*,

McCune, Chuthamard McCune and McCune Works, Inc., jointly and severally, in the amount of $193,240.00, as repayment for the stock purchases in McCune Works, Inc., by Thomas W. Kuehn.

Additionally, Robert Pidcock, as personal representative of the estate of Thomas W. Kuehn, is hereby granted judgment against Chuck McCune, Chuthamard McCune and McCune Works, Inc., jointly and severally in the amount of $96,367.00, as of March 31, 2019, and accumulating interest at the yearly rate of 6% accruing daily from April 1, 2019 until paid in full, for the loan from Thomas W. Kuehn, the terms of the agreement which Defendants have breached **and which was procured by fraud as stated above**.

Additionally, Chuck McCune shall pay $1,795.77 as a sanction for the cost of taking his deposition, as ordered May 11, 2020, and Chuthamard McCune shall pay $415.18 as a sanction for the cost of taking her deposition, as ordered on May 11, 2020. Chuck and Chuthamard McCune, jointly and severally, shall pay $2,292.34 as sanctions for the withdrawal of motions responded to, as ordered by the Court on November 12, 2019.

Pre-judgment interest shall accrue at 10% on the stock purchase amount from the date of the filing of the complaint which is April 19, 2019. Post-judgment interest shall accrue on the judgment portion for the stock purchase and sanctions amounts at the rate of 15% beginning on the date the judgment is entered.

(emphasis added). The Amended State Court Judgment removed the bolded phrase, leaving the rest of the judgment the same as the Original State Court Judgment.

McCune Works was formed in 2005 by Chuck and Chuthamard McCune. McCune Works is a New Mexico corporation and had its principal place of business in New Mexico at the time of all stock sales. At all material times in this matter, Mr. McCune was the registered agent, president, chief executive officer, treasurer, and sole director of McCune Works, and Mrs. McCune was the secretary of McCune Works.

Mr. McCune "performed the sale of all stock to all purchasers of McCune Works stock." Summary Judgment Motion, ¶ 26. Stock was issued to at least 67 separate parties, and sold for

---

248 F.3d 946 (10th Cir. 2001); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("[T]he bankruptcy court appropriately took judicial notice of its own docket[.]").

money to at least 41 of those parties. The loan made by Thomas W. Kuehn to McCune Works was not registered pursuant to the New Mexico Uniform Securities Act.

b. **Material Facts in Genuine Dispute**

The Personal Representative alleged, but did not provide evidence or point to parts of the record in support, that:

> [Neither] Chuck McCune, nor anyone else, ever filed any notices for the sale of McCune Works stock pursuant to the New Mexico Uniform Securities Act.

> [Neither] Chuck McCune, nor anyone else, ever paid any fees for McCune Works related to stock sales pursuant to the New Mexico Uniform Securities Act.

> McCune Works filed no notice of exemption of any type with the director of the securities division of the regulation and licensing department of the State of New Mexico or with any other State entity.

> [Neither] Chuck McCune, nor anyone else, ever filed any notices with the Securities and Exchange Commission or any other Federal entity regarding the sale of stock in McCune Works.

> [Neither] Chuck McCune, nor anyone else, ever filed any documents with the federal Securities and Exchange Commission, regarding the sale of stock in McCune Works.

Summary Judgment Motion, ¶¶ 28-32. Similarly, the Personal Representative alleged, but did not provide evidence or point to parts of the record in support, that:

> The loan Tom Kuehn made to McCune Works through Chuck McCune was not registered pursuant to the federal Securities Act of 1933.

Summary Judgment Motion, ¶ 61. Mr. McCune asserts that McCune Works was exempt from registration of sale of securities, and the extent of the involvement of Mrs. McCune in the stock sales of McCune Works is in genuine dispute.[5]

---

[5] The Personal Representative made additional factual assertions which are not relevant to the issues for which he seeks summary judgment and thus have been excluded from this statement of facts.

## IV. DISCUSSION

The Court first addresses the applicable law and determines that New Mexico preclusion law governs. Next, the Court examines the Personal Representative's request that the Amended State Court Judgment has claim preclusive effect to establish the amount, existence, and validity of debt as to the Stock Purchase Amount and Loan Amount and concludes that it does. Finally, the Court addresses the Personal Representative's non-dischargeability claims based on fraud and securities violations.

### (A)  *New Mexico preclusion law applies to the Amended State Court Judgment*

"Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, 'a federal court must give to a state-court judgment the same preclusive effect as would have been given that judgment under the law of the State in which the judgment was rendered.'" *In re Jaramillo*, No. 22-10509, 2023 WL 2682272, at *4 (Bankr. D.N.M. Feb. 15, 2023) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)); *see also Strickland v. City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir. 1997) ("[F]ederal courts . . . give the same preclusive effect to state court judgments that those judgments would be given in the state courts from which they emerged."). In this case, the Amended State Court Judgment was entered by a New Mexico state district court. The Court will, therefore, apply New Mexico preclusion law.[6]

### (B)  *Summary judgment is granted on the amount, existence, and validity of debt*

The Personal Representative seeks summary judgment on his claim that the Stock Purchase Amount and Loan Amount are owed to him in his representative capacity jointly and

---

[6] The Court notes that New Mexico and federal preclusion law principles are, for the most part, the same. *See Moffat v. Branch*, 2005-NMCA-103, ¶ 11, 138 N.M. 224, 228, 118 P.3d 732, 736 ("Federal law and New Mexico law are not divergent on claim preclusion doctrine[.]"); *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 13, 139 N.M. 637, 643, 137 P.3d 577, 583 (finding "little difference between federal and state law on the collateral estoppel elements important to this case").

severally by the McCunes. The Personal Representative asserts that the Amended State Court Judgment has claim preclusive effect to establish that such amounts are owed, and the Court agrees.[7]

Under New Mexico law, "there are four requisite elements for res judicata [claim preclusion]: (1) the same party or parties in privity; (2) the identity of capacity or character of persons for or against whom the claim is made; (3) the same subject matter; and (4) the same cause of action in both suits." *Strickland*, 130 F.3d at 1411 (citing *Myers v. Olson*, 1984-NMSC-015, ¶ 9, 100 N.M. 745, 747, 676 P.2d 822, 824).[8] In addition, before claim preclusion can bar a subsequent claim, the party to be precluded must have had a "full and fair" opportunity to litigate the claim in the prior action. *Bank of Santa Fe v. March Plaza Assocs*., 2002-NMCA-014, ¶ 14, 131 N.M. 537, 540, 40 P.3d 442, 445.

In bankruptcy cases, generally a "state court judgment is entitled to claim preclusive effect to establish the existence and amount of the debt, but does not establish the nature of the debt as non-dischargeable." *In re Lopez*, No. 21-10836, 2022 WL 1160607, at *6 (Bankr. D.N.M. Apr. 19, 2022) (citing *Sanders v. Crespin (In re Crespin)*, 551 B.R. 886, 897 (Bankr. D.N.M. 2016)). Unlike issue preclusion, "claim preclusion does not have an actual litigation requirement." *Lopez*, 2022 WL 1160607, at *3. Thus, a default judgment can have claim

---

[7] The Amended State Court Judgment also awarded smaller amounts against Chuck McCune and Chuthamard McCune as sanctions, but the Personal Representative did not seek summary judgment with respect to these amounts, so the Court does not include them here.

[8] *See also Moffat v. Branch*, 2005-NMCA-103, ¶ 11, 138 N.M. 224, 228, 118 P.3d 732, 736 ("Four elements must be met for claim preclusion to bar a claim. The two actions (1) must involve the same parties or their privies, (2) who are acting in the same capacity or character, (3) regarding the same subject matter, and (4) must involve the same claim."); *Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54, 57 ("A party asserting res judicata or claim preclusion must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." (citing *Kirby v. Guardian Life Ins. Co.*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 124, 231 P.3d 87, 105)).

preclusive effect. *See id.* at *3-6 (holding that state court default judgment had claim preclusive effect to establish the validity, existence, and amount of debt); *Crespin*, 551 B.R. at 900 (holding that state court default judgment had claim preclusive effect to establish existence and amount of debt); *cf. Blea v. Sandoval,* 1988-NMCA-036, ¶ 13, 107 N.M. 554, 558, 761 P.2d 432, 436, *cert. denied,* 107 N.M. 413, 759 P.2d 200 (Table) (1988) ("In New Mexico, we recognize that default judgments do not have collateral estoppel [issue preclusive] effect in future litigation, although they may have res judicata [claim preclusive] effect.").

All four requisite elements are present here. Further, the Court determines that the McCunes had a "full and fair opportunity to litigate" the issues before the state court. "Whether a party has had a full and fair opportunity to litigate depends on equitable considerations, such as whether the party had an incentive for a vigorous defense, procedural opportunities, and inconvenience of the litigation forum." *Sergejev v. Alderman (In re Alderman)*, No. 20-1003, 2021 WL 866691, at *8 (Bankr. D.N.M. Mar. 8, 2021) (citing *Reeves v. Wimberly*, 1988-NMCA-038, ¶ 15, 107 N.M. 231, 235, 755 P.2d 75, 79). The McCunes had incentive for vigorous defense and participated in the state court case. Indeed, Mr. McCune asserts that the Original State Court Judgment resulted from their "refusal to provide records" in response to discovery requests "that would identify those shareholders[,] staff, family and associates that were threatened with deadly force" by plaintiff's family. AP Doc. 152 at p. 14. Any grounds the McCunes had for refusing to provide records were matters for the state court to decide. The refusal to litigate or produce documents does not mean lack of opportunity to litigate.

Thus, claim preclusion applies to establish the validity, existence, and amount of the Personal Representative's monetary claims against the McCunes in this adversary proceeding. Specifically, the Personal Representative requested summary judgment on his claim that Chuck

McCune and Chuthamard McCune jointly and severally owe: (i) the Stock Purchase Amount, including interest at the rate set forth in the Amended State Court Judgment, and (ii) the Loan Amount, including interest at the rate set forth in the Amended State Court Judgment. The Court agrees that claim preclusion applies to the Amended State Court Judgment to establish that the McCunes owe such amounts. Thus, unless and until the state court alters or further amends the Amended State Court Judgment (or it is reversed or modified on appeal), this Court will uphold the claim preclusive effect of the Amended State Court Judgment as establishing that the McCunes jointly and severally owe the Stock Purchase Amount and Loan Amount to the Personal Representative.

(C) *Summary judgment is denied on the claim for non-dischargeability of the Loan Amount on the basis of fraud under § 523(a)(2)*

The Personal Representative seeks summary judgment on his claim that the Loan Amount is non-dischargeable because it was "procured by fraud," as set forth in the Original State Court Judgment. The Court will deny summary judgment on this claim.

Section 523(a)(2) provides, in relevant part, that debt is non-dischargeable in bankruptcy "to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." § 523(a)(2)(A). The Personal Representative argues that the Original State Court Judgment, which stated that the Loan Amount was "procured by fraud as stated above," has preclusive effect as to fraud, and therefore the Loan Amount is non-dischargeable under § 523(a)(2). This argument fails for three reasons.

12

(1)   *Claim preclusion does not apply to non-dischargeability claims*

First, claim preclusion does not apply to non-dischargeability claims. "[C]laim preclusion does not apply to non-dischargeability claims asserted in bankruptcy cases because non-dischargeability claims can only be asserted in connection with a bankruptcy case; consequently, the 'same claim' requirement for application of claim preclusion cannot be satisfied." *Lopez*, 2022 WL 1160607, at *3; *see also Brown v. Felsen*, 442 U.S. 127, 133-39 (1979) (holding that whether a debt is excepted from discharge is a matter within the exclusive jurisdiction of the bankruptcy court and could not have been raised in the state court action, so claim preclusion did not apply to bar subsequent litigation of dischargeability claim). Thus, the Amended State Court Judgment does not have claim preclusive effect with respect to the Personal Representative's non-dischargeability claim under § 523(a)(2).

(2)   *Amended State Court Judgment does not meet standard
for issue preclusion as to fraud*

Second, the Amended State Court Judgment does not have issue preclusive effect as to fraud. Issue preclusion under New Mexico law requires the following:

> first, the parties in the second suit must be the same or in privity with the parties in the first suit; second, the causes of action must be different; third, the issue or fact must have been actually litigated in the first case; and fourth, the issue must have been necessarily determined in that case.

*Lopez,* 2022 WL 1160607, at *2 (quoting *Blea v. Sandoval*, 1988-NMCA-036, ¶ 18, 107 N.M. at 559, 761 P.2d at 437). "Default judgments generally do not have issue preclusive effect under New Mexico law . . . because issues determined by default are not actually litigated." *Lopez*, 2022 WL 1160607, at *6 (internal citations omitted). The Personal Representative appears to concede that the issues in the Amended State Court Judgment were not "actually litigated." Summary Judgment Motion at pp. 17-19 (referring to the State Court Judgment as a "default

13

judgment" and a "sanction"). Thus, the Amended State Court Judgment does not have issue preclusive effect.

> (3) *Amended State Court Judgment removed fraud language*

Finally, even if the Original State Court Judgment could have had preclusive effect with respect to fraud, the state court removed the language from the Original State Court Judgment providing that the Loan Amount was "procured by fraud as stated above." The Amended State Court Judgment no longer refers to fraud at all, so it clearly contains no finding of fraud. For these reasons, the Personal Representative's claim for summary judgment on non-dischargeability of the Loan Amount on the basis of fraud will be denied.

> (D) *Summary judgment is denied on the claims for non-dischargeability of the Stock Purchase Amount and Loan Amount under § 523(a)(19)*

The Personal Representative also seeks summary judgment on his claims that the Stock Purchase Amount and Loan Amount are non-dischargeable under § 523(a)(19) because the debt is for securities violations. The Court will deny summary judgment on these claims.

Section 523(a)(19) provides that a debt is excepted from discharge if such debt:

(A) is for—
　(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
　(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
(B) results, before, on, or after the date on which the petition was filed, from—
　(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
　(ii) any settlement agreement entered into by the debtor; or
　(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

As the Tenth Circuit Court of Appeals explained,

Essentially, a debtor cannot discharge his or her debt if two conditions are satisfied: first,

14

the debt must stem from a violation of securities laws or a fraud in connection with the purchase or sale of a security, and second, the debt must be memorialized in a judicial or administrative order or settlement agreement.

*Tripodi v. Welch*, 810 F.3d 761, 766 (10th Cir. 2016).[9] In this case, the Personal Representative has shown that the McCunes owe a memorialized debt (the Stock Purchase Amount and Loan Amount), but he has failed to show that the memorialized debt resulted from the McCunes' violation(s) of securities laws or fraud in connection with the purchase or sale of securities.

> (1) *The claim for non-dischargeability of the Loan Amount under § 523(a)(19) was raised for the first time on summary judgment*

With respect to the Loan Amount, it was not until the Summary Judgment Motion that the Personal Representative asserted that the underlying note was an unregistered security sold in violation of securities laws. The Personal Representative's adversary complaint in this proceeding only asserted that stock sales were securities violations. *See* AP Doc. 1 at pp. 16-17.

Parties are not permitted to raise new claims on summary judgment that were not pled in the complaint. *E.g., Diaz Cruz v. P.R. Treasury Dep't (In re Diaz Cruz)*, No. 11-00263, 2013 WL 3153993, at *6-7 (Bankr. D.P.R. June 19, 2013) ("[C]ourts have routinely held that a party cannot seek summary judgment for himself on a new claim that has not been pled in his complaint." (citing cases)).[10]

---

[9] *See also Berry v. Pentecost (In re Pentecost)*, 631 B.R. 481, 488 (Bankr. N.D. Okla. 2021) ("First, the record on summary judgment must show that the debtor owes the plaintiff a debt that is *memorialized* by (a) a judgment, order, consent order or decree issued in a state or federal court or administrative proceeding; or (b) a settlement agreement; or (c) a court or administrative order for requiring the debtor to pay the plaintiff damages, fines, penalties, restitution, disgorgement, attorney fees, costs, or other payments. Second, the record must establish that the memorialized debt *resulted from* (a) the debtor's violations of securities laws and/or regulations or (b) the debtor's fraud, deceit, or manipulation in connection with the purchase or sale of any security.") (emphasis in original).

[10] *See also In re GT Advanced Techs., Inc.*, 547 B.R. 3, 13 (Bankr. D.N.H. 2016), *aff'd sub nom. Tera Xtal Tech. Corp. v. GT Advanced Techs., Inc.*, No. 16-CV-91-PB, 2017 WL 590340 (D.N.H. Feb. 13, 2017) ("[I]t is well established that 'plaintiffs may not raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment[.]'" (quoting *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 76 (1st Cir. 2016))).

15

Because the Personal Representative raised the non-dischargeability of the Loan Amount pursuant to § 523(a)(19) for the first time in his Summary Judgment Motion, and it was not pled in his complaint, summary judgment on such claim will be denied. Further, even if the Personal Representative had raised the claim in his complaint, for the reasons discussed below, he would still not be entitled to summary judgment on such claim.

> (2) *Section 523(a)(19) overrides the traditional requirements of issue preclusion, but the Amended State Court Judgment is silent regarding securities violations*

Section 523(a)(19) "expand[s] the preclusive effect given to the disposition of prepetition securities fraud lawsuits and administrative proceedings." *Winkler v. Pierce (In re Pierce)*, 563 B.R. 698, 705 (Bankr. C.D. Ill. 2017). "In enacting § 523(a)(19), Congress departed from the common-law understanding of collateral estoppel and issue preclusion principles. Section 523(a)(19)(B)(i) permits a determination of nondischargeability based on '*any* judgment[.]'" *Cooley-Linder v. Behrends (In re Behrends)*, 660 F. App'x 696, 700 (10th Cir. 2016) (emphasis added by *Behrends*). In *Behrends*, the Tenth Circuit Court of Appeals held, in a non-dispositive decision, that the plaintiffs did not have to prove an arbitration award's finding of securities violations was "actually litigated" in order to satisfy the non-dischargeability standard in § 523(a)(19). *Id.* at 700-01.[11] This Court finds *Behrends* to be persuasive.

---

[11] *See also Paik v. Lee (In re Lee)*, 536 B.R. 848, 859 (Bankr. N.D. Cal. 2015) ("Congress clearly intended to alter the 'actually litigated' requirement of the issue preclusion analysis[.]"); *Voss v. Pujdak (In re Pujdak)*, 462 B.R. 560, 577-78 (Bankr. D.S.C. 2011) ("South Carolina's traditional approach to collateral estoppel, requiring that [the] matter be 'actually litigated,' is altered in § 523(a)(19) actions."); *Pentecost*, 631 B.R. at 487 ("Under § 523(a)(19), *all* debts resulting from securities violations, including debts represented by stipulated and default judgments, and debts arising from settlement agreements, are non-dischargeable because Congress eliminated the 'actually litigated' prong of the doctrine of issue preclusion for this purpose.") (emphasis in original); *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 192 (Bankr. E.D. Tex. 2015) ("§ 523(a)(19) . . . preempts and effectively extends the common law principles of issue preclusion, by giving preclusive effect to memorialized judicial decisions or settlements which have not been 'actually litigated.'").

16

Nevertheless, despite the expanded preclusive effect, the Amended State Court Judgment is silent as to whether there is any liability for, or any damages were awarded based on, securities violation(s). On the face of the Amended State Court Judgment, nowhere does it make a finding of securities violation(s). The Amended State Court Judgment states that judgment on the Stock Purchase Amount is granted "as repayment for the stock purchases in McCune Works, Inc., by Thomas W. Kuehn" and judgment for the Loan Amount is granted "for the loan from Thomas W. Kuehn, the terms of the agreement which Defendants have breached." These are not findings of securities violations.

Some courts look to the underlying claims to determine that a judgment contains an implied finding of securities violation(s). *See, e.g., Blake v. Fusco (In re Fusco)*, 641 B.R. 438, 455 ("Even absent explicit finding of securities violation, this element is satisfied if the securities violation is necessary to the judgment[.]"). However, examining the Personal Representative's underlying complaint in connection with the Amended State Court Judgment, there are multiple alternative claims related to the Stock Purchase Amount in addition to securities violations: (1) fraud, (2) breach of fiduciary duty, and (3) refusal to allow inspection of McCune Works' corporate books and records. *See* Doc. 151-2. Further, the primary claim related to the Loan Amount in the state court complaint is simply breach of contract. *Id.* Thus, a finding of securities violation is not necessary to the Amended State Court Judgment.

(3) *The bankruptcy court has authority to determine securities violation(s)*

Since the Amended State Court Judgment does not contain a finding of securities violation, the Court next looks to whether it has the authority to make a determination as to whether a security violation occurred for purposes of § 523(a)(19).

There is a split in the caselaw on whether the determination of a securities violation under § 523(a)(19) must be made by a non-bankruptcy tribunal. *Compare Terek v. Bundy (In re*

*Bundy)*, 468 B.R. 916, 918-22 (Bankr. E.D. Wash. 2012) (holding that determination of securities violation under § 523(a)(19)(A) must be made by a tribunal other than the bankruptcy court), *with Berry v. Pentecost (In re Pentecost)*, 631 B.R. 481, 491 (Bankr. N.D. Okla. 2021) (holding that bankruptcy court is authorized to make determination of securities violation under § 523(a)(19)).

The starting point to resolve the issue is the language of § 523(a)(19)(B), which adds the memorialization requirement. In order for a debt to be non-dischargeable under § 523(a)(19), it must be debt that:

> (B) results, before, on, or after the date on which the petition was filed, from—
> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
> (ii) any settlement agreement entered into by the debtor; or
> (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor[.]

§ 523(a)(19)(B). The court in *Bundy* reasoned that "interpreting § 523(a)(19) to allow a bankruptcy court to decide whether the requirement of § 523(a)(19)(A) ha[s] been met would render § 523(a)(19)(B) meaningless." *Bundy*, 468 B.R. at 921; *see also Faris v. Jafari (In re Jafari)*, 401 B.R. 494, 499 (Bankr. D. Colo. 2009) ("If the Court were to interpret this language broadly enough to allow the bankruptcy court's own order to satisfy the requirement, then it would essentially read the Subsection B requirement out of the statute.").

However, a "growing number" of decisions have held that bankruptcy courts have concurrent authority to make the determination as to whether there has been a securities violation for purposes of § 523(a)(19). *Holzhueter v. Groth (In re Holzhueter)*, 571 B.R. 812, 821 (Bankr. W.D. Wis. 2017) (citing cases). As the court in *Pentecost* explained,

> Section 523(a)(19)(B) expressly permits post-petition adjudication or settlement of claims arising from violations of securities laws and regulations, and § 523(a)(19)(B)(i) provides that such determinations may be made

18

> "in *any* Federal or State judicial or administrative proceeding." The statute does
> not limit adjudications to non-bankruptcy courts.

*Pentecost*, 631 B.R. at 491 (emphasis added by *Pentecost*). Prior to 2005, § 523(a)(19)(B)

required a prepetition judgment or other memorialization; the phrase "before, on, or after the date

on which the petition was filed" was added by the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 ("BAPCPA". *In re Chan*, 355 B.R. 494, 503 (Bankr. E.D. Pa. 2006)

(citing Pub. L. No. 109-8, § 1404(a), 119 Stat. 23 (2005)).

> The phrase "before, on, or after the date on which the petition was filed" was not
> added to § 523(a)(19) to provide creditors with an unfettered right to proceed in a
> nonbankruptcy forum, notwithstanding a defendant's commencement of a
> bankruptcy case. Rather, the phrase was intended to make it clear that a debt
> arising under the federal securities laws or as a result of fraud in connection with
> the sale of a security may be determined nondischargeable under § 523(a)(19)
> even if the liability was not fixed prior to the commencement of the bankruptcy
> case. In other words, the phrase was added to the statute to remove a temporal
> limitation from the elements of the § 523(a)(19) discharge exception. The
> additional phrase merely insures that the efficacy of the discharge exception is not
> dependent upon the timing of the liability determination; *i.e.,* dischargeability will
> not turn on whether the creditor or the debtor wins the "race to the courthouse."

*Chan*, 355 B.R. at 504; *see also Holzhueter*, 571 B.R. at 822 ("BAPCA made it clear that such a

race to the bankruptcy court would not disable this exception to discharge." (quoting *Floyd v.*

*Hill (In re Hill)*, 495 B.R. 646, 656 (Bankr. D.N.J. 2013))). Since the temporal limitation has

been removed, judgments entered by bankruptcy courts would be made in a "federal judicial

proceeding" and fall squarely within § 523(a)(19)(B). This reading does not render

§ 523(a)(19)(B) superfluous, because it still provides an expanded universe of the determinations

which will be given preclusive effect for purposes of § 523(a)(19) non-dischargeability,

including settlement agreements and judgments that were not "actually litigated."

19

(4) *The facts not in genuine dispute fail to establish*
    *that the McCunes are liable for securities violation(s)*

The Personal Representative mainly relies on the Amended State Court Judgment and

underlying complaint to conclusively establish securities law violations but does assert he is

entitled to summary judgment on securities violations without relying on the Amended State

Court Judgment. The Personal Representative asserts that the stock underlying the Stock

Purchase Amount and the note underlying the Loan Amount were both "securities," and that they

were unregistered securities sold in violation of New Mexico securities law (N.M.S.A.

§ 58-13C-301) and federal securities law (15 U.S.C. § 77eee).

Under New Mexico law, "[i]t is unlawful for a person to offer or sell a security in New

Mexico" unless one of three conditions apply:

A.  the security is a federal covered security;
B.  the security, transaction or offer is exempted from registration pursuant to Sections
    201 through 203 of the New Mexico Uniform Securities Act; or
C.  the security is registered pursuant to the New Mexico Uniform Securities Act.

N.M.S.A. § 58-13C-301. The adversary complaint alleges that no exemptions to securities law

registration requirements apply to McCune Works' stock sales. Mr. McCune asserts that

McCune Works was exempt under New Mexico law from registering sales of its securities. For

example, the sale of securities is not required to be registered if it is:

a sale or an offer to sell securities by or on behalf of an issuer, if the transaction is
part of a single issue in which:
    (1) there are not more than ten purchasers who are New Mexico residents,
    other than purchasers designated in Subsection M of this section during
    any twelve consecutive months;
    (2) no general solicitation or general advertising is used in connection with
    the offer to sell or the sale of the securities; and
    (3) no commission or other remuneration is paid or given, directly or
    indirectly, to a person other than a broker-dealer registered or not required
    to be registered pursuant to the New Mexico Uniform Securities Act or an
    agent registered pursuant to that act for soliciting a prospective purchaser
    in New Mexico, and either:
        (a) the seller reasonably believes that all of the purchasers in New

20

> Mexico are purchasing for investment; or
> (b) immediately before and immediately after the transaction, the issuer reasonably believes that the securities of the issuer are held by fifty or fewer beneficial owners and the transaction is part of an aggregate offering that does not exceed one million dollars ($1,000,000) during any twelve consecutive months; but the director, by rule or order as to a security or transaction or a type of security or transaction, may withdraw or further condition this exemption or may waive one or more of the conditions of this subsection[.]

N.M.S.A. § 58-13C-202(N). The facts not in genuine dispute do not foreclose the possibility that McCune Works' sale of stock or notes may fall within this or another New Mexico registration exemption.

In addition, the facts not in genuine dispute fail to establish that under New Mexico law Chuthamard McCune is jointly and severally liable with McCune Works for any securities violations. N.M.S.A. § 58-13C-509(G) provides that a person has joint and several liability for sale of unregistered securities if such person "directly or indirectly controls" the primary offender; is a "managing partner, executive officer or director;" or "materially aids" the transaction. N.M.S.A. § 58-13C-509(G). The facts not in genuine dispute fail to establish that Chuthamard McCune directly or indirectly controlled McCune Works; was a managing partner, executive officer, or director of McCune Works; or materially aided in its sale of securities.

With respect to federal securities law violations, the Personal Representative asserts that the McCunes, by selling unregistered securities for McCune Works, violated 15 U.S.C. § 77eee. Such provision describes the information required to be included in a registration statement relating to a security, but it does not provide when a registration statement relating to a security is required to be filed.[12] Further, Mr. McCune asserts that McCune Works was exempt under

---

[12] "Subject to the provisions of section 77ddd of this title, a registration statement relating to a security shall include the following information and documents . . . ." 15 U.S.C. § 77eee(a).

federal law from registering sales of its securities, including the exemption available in 17 C.F.R. § 230.504, also known as Rule 504 of Regulation D. Rule 504 of Regulation D provides a registration exemption for the offer and sale of up to $10 million of securities by an issuer in a 12-month period, so long as the issuer is not: (i) subject to the reporting requirements of § 13 or 15(d) of the Exchange Act, (ii) an investment company, (iii) a "development stage company that either has no specific business plan or purpose or has indicated that its business plan is to engage in a merger or acquisition with an unidentified company or companies, or other entity or person," or (iv) disqualified as a "bad actor" under 17 C.F.R. § 230.506(d). 17 C.F.R. § 230.504. The facts not in genuine dispute do not foreclose the possibility that McCune Works' sale of stock or notes may fall within this or another federal registration exemption.[13]

Finally, the Summary Judgment Motion does not sufficiently establish the amount of damages for which summary judgment is sought based on McCune Work's stock sales to Mr. Kuehn ($193,240 plus interest) or Mr. Kuehn's loan to McCune Works ($96,367 plus interest). In addition to the Amended State Court Judgment, the Summary Judgment Motion refers to a list provided by Mr. McCune of all the investors in McCune Works, with the date and purchase price for each stock sale. AP Doc. 113-1. The total purchase price for stock sales from McCune Works to Mr. Kuehn recited in that list is $115,000, which differs from the damages awarded in the Amended State Court Judgment relating to stock sales. The list does not include the loan. Thus, the Personal Representative has failed to establish that he is entitled as a matter of law, based on facts not in genuine dispute, to non-dischargeability of the Stock Purchase Amount and Loan Amount under § 523(a)(19).

---

[13] Mr. McCune has also asserted McCune Works' sale of securities was exempt from registration pursuant to 17 C.F.R. § 230.506.

22

## V. CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court will enter an order granting summary judgment in favor of the Personal Representative as to the validity, existence, and amount of Stock Purchase Amount and Loan Amount and denying summary judgment on the Personal Representative's claims for non-dischargeability of debt under § 523(a)(2) and § 523(a)(19).

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: April 10, 2023

COPY TO:

<u>Plaintiff</u>
Robert L. Pidcock, as Personal Representative
of the Estate of Thomas W. Kuehn
501 Wyoming Blvd. SE
Albuquerque, NM 87123

<u>Defendants</u>
Chuck McCune
2139 Don Andres Pl SW
Albuquerque, NM 87105

Chuthamard McCune
2139 Don Andres Pl SW
Albuquerque, NM 87105

23